Thomas CLINE; Timothy Irving; Keith Riney; Dennis Trammell each on his own behalf and on behalf of all the employees similarly situated, Plaintiffs–Appellants,

v.

THE INDUSTRIAL MAINTENANCE ENGINEERING & CONTRACTING CO.; George R. Beltz, individually and in his official capacity as International President of the I.U.P.I.W. and as a fiduciary; Pamela Barlow, individually and in her official capacity as Secretary–Treasurer of the I.U.P.I.W. and as a fiduciary; Joe Beltz, individually and in his official capacity as Vice President of the I.U.P.I.W. and as a fiduciary; Thomas Walsh, individually and in his capacity as fiduciary; Maurice Lampley, individually and in his capacity as fiduciary; John Delaney, individually and in his capacity as a fiduciary; Harold Johnson, individually and in his capacity as a fiduciary; Robert Ortega, individually and in his capacity as a fiduciary; Geoffrey Beltz, individually and in his capacity as a fiduciary; Oak Tree Administrators, Inc.; ERISA, regulated employee benefit plan; International Union of Petroleum & Industrial Workers Canadian Benefit Fund; Great West Life and Annuity Co., Defendants–Appellees.

The Industrial Maintenance Engineering & Contracting Co.; Geoffrey Beltz, individually and in his capacity as a fiduciary; Oak Tree Administrators, Inc., ERISA, regulated employee benefit plan; Great West Life & Annuity Co., Defendants,

and

George R. Beltz, individually and in his official capacity as International President of the I.U.P.I.W. and as a fiduciary; Pamela Barlow, individually and in her official capacity as Secretary–Treasurer of the I.U.P.I.W. and as a fiduciary; Joe Beltz, individually and in his official capacity as Vice President of the I.U.P.I.W. and as a fiduciary; Thomas Walsh, individually and in his capacity as fiduciary; Maurice Lampley, individually and in his capacity as fiduciary; John Delaney, individually and in his capacity as a fiduciary; Harold Johnson, individually and in his capacity as a fiduciary; Robert Ortega, individually and in his capacity as a fiduciary; International Union of Petroleum & Industrial Workers Canadian Benefit Fund; Great West Life and Annuity Co., Defendants–Appellants,

v.

Thomas Cline; Timothy Irving; Keith Riney; Dennis Trammell, Plaintiffs–Appellees.

Thomas Cline; Timothy Irving; Keith Riney; Dennis Trammell, Plaintiffs–Appellees,

v.

The Industrial Maintenance Engineering & Contracting Co.; Defendant–Appellant,

George R. Beltz, individually and in his official capacity as International President of the I.U.P.I.W. and as a fiduciary; Pamela Barlow, individually and in her official capacity as Secretary–Treasurer of the I.U.P.I.W. and

as a fiduciary; Joe Beltz, individually and in his official capacity as Vice President of the I.U.P.I.W. and as a fiduciary; Thomas Walsh, individually and in his capacity as fiduciary; Maurice Lampley, individually and in his capacity as fiduciary; John Delaney, individually and in his capacity as fiduciary, Defendants.

Thomas Cline; Timothy Irving; Keith Riney; Dennis Trammell, Plaintiffs–Appellees,

v.

The Industrial Maintenance Engineering & Contracting Co., Defendant,

and

Great West Life and Annuity Co., Defendant–Appellant.

Nos. 98–16025, 98–16546, 98–16560, 98–16616.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1999

Filed Jan. 11, 2000

David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, Oakland, California, for the plaintiffs-appellants and cross-appellees.

James P. Baker, Brobeck, Phleger & Harrison, San Francisco, California, for defendant-appellee and cross-appellants The Industrial Maintenance Engineering & Contracting Company; Steuart H. Thompson, Sutherland, Asbill & Brennan, Washington, D.C., for defendant-appellee and cross-appellant Great–West Life & Annuity Insurance Company.

Before: GOODWIN, SCHROEDER, and ALARCON, Circuit Judges.

GOODWIN, Circuit Judge:

These consolidated appeals arise out of an attempted class action brought to impose ERISA status and liability upon an employee benefit plan which the defendants assert is an IRA plan not covered by Parts 2 and 3 of Title I of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. The District Court granted summary judgments. The plaintiffs have appealed the judgments, and the defendants have appealed the denial of attorney fees. We affirm.

## FACTS

On or about December 1, 1977, Appellee The Industrial Maintenance Engineering & Contracting Co. ("TIMEC") and Appellee International Union of Petroleum & Industrial Workers (the "Union") [1] created

---

1. The Union Defendants also include: George R. Beltz, Pamela Barlow, Joe Beltz, Thomas Walsh, Maurice Lampley, John Delaney, Harold Johnson, Robert Ortega and Geoffrey Beltz, individually and in their various alleged fiduciary capacities.

a group Individual Retirement Annuity (IRA) plan (the "Plan") for the benefit of Union members who were employees of TIMEC. The Plan purchased a group IRA policy from Appellee Great–West Life & Annuity Insurance Company ("Great–West"). Another company, Appellee Oak Tree Administration, Inc. ("Oak Tree") provides services to the Plan. At its inception the Plan was funded through employee contributions only. TIMEC, the Union, the Plan, Great–West and Oak Tree are collectively the Defendants, Appellees and Cross–Appellants (the "Appellees").

Between 1977 and 1996, amendments were made to the Plan. In particular, the collective bargaining agreement between TIMEC and the Union (the "CBA") was amended in Article X, Section 1, to provide for employer contributions in the amount of 3% of an employee's gross wages. The Plan was also amended to require participation by employees who worked three consecutive years and maintained a 1600 hour per year workload. Participation was also limited to those employees.

On December 4, 1995, Appellant Thomas Cline, a Union member and TIMEC employee, requested that certain Appellees provide him with Plan documents required to be disclosed to Plan participants under ERISA. On September 17, 1996, Appellants Timothy Irving, Keith Riney and Dennis Trammell, also requested the Plan documents. Except for the participation statements which were apparently delivered after some delay, no Plan documents were provided. Appellees deny that any such documents have ever existed. Thomas Cline, Timothy Irving, Keith Riney, Dennis Trammell and the unnamed members of the class are collectively the Plaintiffs, Appellants and Cross–Appellees (the "Appellants").

On October 4, 1996, Appellants filed the complaint against Appellees and on behalf of themselves and all similarly situated employees. Appellants alleged a wide range of ERISA violations centering on the documentation, participation, reporting and disclosure provisions of the Act. The heart of the complaint is Appellants' contention that ERISA requires inclusion in the Plan of employees with one year of service (instead of three) and 1000 hours of workload (instead of 1600). Because the Appellees did not, and do not, consider the excluded employees participants of the Plan, no contributions have been made on their behalf.

On May 2, 1997, the District Court (Judge Armstrong) dismissed all pending claims with leave to amend. In due course a first amended complaint was filed. That document continued to allege the various ERISA violations and for the first time characterized the subject plan as not IRA qualified. In December of 1997, this case was reassigned to Judge Breyer whose rulings are challenged in these appeals.

Judge Breyer rejected Appellants' claim that the Plan was subject to Parts 2 and 3 of Title I of ERISA and the minimum participation standards contained therein. He held that the plaintiffs could not allege that the Plan was not an IRA, because their earlier pleadings had identified the Plan as an IRA. Furthermore, the Court held that they had failed to raise a material issue of fact as to the IRA status of the Plan. The Court granted Appellees summary judgments but denied their motions for attorney fees under 29 U.S.C. § 1132(g)(1) and 28 U.S.C. § 1927 in the amount of $206,173.50. The various appellees have cross-appealed the denial of attorney fees. All parties have requested fees on appeal.

## STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo. *Smith v. Hughes Aircraft Co.*, 22 F.3d 1432, 1435 (9th Cir.1993). We employ the same analysis used by the district court in reviewing a summary judgment order. *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir.1997). We must determine whether, when viewing the evidence in the light most favorable to the nonmoving party, there exists any genuine issue of material fact, and whether the district court correctly applied

the substantive law. *Tarin v. County of Los Angeles,* 123 F.3d 1259, 1263 (9th Cir. 1997); *Smith,* at 1435.

The "materiality" requirement provides that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In order to raise a "genuine" issue of fact the "evidence [must be] such that a reasonable [judge or] jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden may be met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Once the moving party meets its burden of establishing the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 323–24, 106 S.Ct. 2548; *Tarin,* 123 F.3d at 1263. "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (1986) (citing *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968))(internal quotation marks omitted).

Federal Rule of Civil Procedure 56(f) provides that if further discovery is required to oppose the motion, the plaintiff must identify the facts and specific discovery that will create a genuine issue of material fact. See *Terrell v. Brewer,* 935 F.2d 1015, 1018 (9th Cir.1991).

Summary judgment may be affirmed on any ground supported in the record, including reasons not relied upon by the district court. *Oregon Short Line R.R. Co. v. Dept. of Revenue of Oregon,* 139 F.3d 1259, 1265 (9th Cir.1998).

## STANDING OF INDIVIDUAL PLAINTIFFS

■ The District Court properly held that actions against ERISA fiduciaries generally cannot be brought on behalf of individuals. *Cinelli v. Security Pac. Corp.,* 61 F.3d 1437, 1445 (9th Cir.1995) (liability for breach of fiduciary duty under ERISA allows recovery only for the plan itself, not for individuals); see *Hunt v. Hawthorne Associates, Inc.,* 119 F.3d 888, 903 n. 44 (11th Cir.1997) (individual plan participant lacks standing under ERISA to sue a plan fiduciary for money damages; the right to sue for breach of fiduciary duty belonged to all of the plan's participants as a group).

■ The Court also correctly held that the individual plaintiffs are barred entirely from bringing any breach of fiduciary duty claims against the defendants. In *Forsyth v. Humana, Inc.,* this court held that Appellants could not bring a breach of fiduciary duty claim under § 1132(a)(3) because a claim for breach of contract under § 1132(a)(1) provided the appropriate relief. 114 F.3d 1467, 1474–75 (9th Cir. 1997). Appellants' reliance on the Supreme Court's opinion in *Varity v. Howe* is misplaced. In *Varity,* the Court emphasized that section 1132(a)(3) provides relief only for injuries for which adequate remedy is not otherwise provided. 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Here, Appellants alleged that Appellees violated their fiduciary duties by failing to deposit funds owed to the Plan pursuant to the CBA. Even if the CBA did require these additional deposits, only the plans could pursue claims against defendants for breach of fiduciary duties or for equitable relief under those claims.

The District Court, therefore, properly held that plaintiffs' individual claims in the first, second, and third causes of action for individual damages were not cognizable. Therefore, the only remaining claims were those brought by the named-plaintiffs on behalf of the Plan itself.

## GOVERNING LAW: THE APPLICABILITY OF ERISA

### A. OVERVIEW

Under the terms of Regulations § 2510.3-2, the Plan falls within the definition of "employee pension benefit plan" making it subject to Title I of ERISA. Under the terms of ERISA, the Plan is excluded from coverage of Parts 2 and 3 of Title I of ERISA if it is an "IRA" as defined by the Internal Revenue Code at 26 U.S.C. § 408. The Appellants have failed to raise a genuine issue of material fact with regard to the "IRA" status of the Plan. From the evidence in the record, the Court was permitted to infer that the Plan qualifies under I.R.C. § 408. Therefore, the Plan is excluded from the coverage of Parts 2 and 3 of Title I of ERISA.

### B. REGULATIONS § 2510.3-2

■ The Regulations provide that certain "individual retirement accounts" or "individual retirement annuities," collectively "IRAs," fall within the scope of ERISA and others do not. 29 C.F.R.

2. Regulation 29 C.F.R. § 2510.3-2 states:

Employee pension benefit plan.
(a) General. This section clarifies the limits of the defined terms "employee pension benefit plan" and "pension plan" for purposes of Title I of the Act and this chapter by identifying certain specific plans, funds and programs which do not constitute employee pension benefit plans for those purposes. To the extent that these plans, funds and programs constitute employee welfare benefit plans within the meaning of section 3(1) of the Act and § 2510.3-1 of this part, they will be covered under Title I; however, they will not be subject to parts 2 and 3 of Title I of the Act.
. . .
(d) Individual Retirement Accounts.
(1) For purposes of Title I of the Act and this chapter, the terms "employee pension benefit plan" and "pension plan" shall not include an individual retirement account described in section 408(a) of the Code, an individual retirement annuity described in section 408(b) of the Internal Revenue Code of 1954 (hereinafter "the

§ 2510.3-2.[2] Under this regulation, certain IRAs which have little or no employer involvement, including no employer contributions, are excluded from the definition of "employee pension benefit plan" and thereby completely excluded from ERISA coverage. Other IRAs fall within the definition of "employee pension benefit plan" and thereby come within the ken of ERISA. See 29 C.F.R. § 2510.3-2(d).

Here, the parties agree that "employer contributions" are made to the Plan. Although there is some disagreement over the application of other portions of § 2510.3-2(d)(1), that disagreement is irrelevant because any failure under § 2510.3-2(d)(1) establishes that the Plan is an "employee pension benefit plan" for the purposes of ERISA.[3]

Having determined that the Plan is an "employee pension benefit plan," the analysis turns to the text of the statute to determine which parts of ERISA apply.

### C. APPLICABILITY OF THE VARIOUS PARTS OF ERISA

Section 1003 provides for the general applicability of ERISA to "employee benefit plans," a term which includes "employ-

Code") and an individual retirement bond described in section 409 of the Code, provided that—
(i) No contributions are made by the employer or employee association;
(ii) Participation is completely voluntary for employees or members;
(iii) The sole involvement of the employer or employee organization is without endorsement to permit the sponsor to publicize the program to employees or members, to collect contributions through payroll deductions or dues checkoffs and to remit them to the sponsor; and
(iv) The employer or employee organization receives no consideration in the form of cash or otherwise, other than reasonable compensation for services actually rendered in connection with payroll deductions or dues checkoffs.

3. It should also be noted that even if the Plan fails to qualify under I.R.C. § 408, the outcome for the purposes of Reg. § 2510.3-2 is the same: the Plan fails to be completely excluded from ERISA coverage.

ee pension benefit plans." [4] 29 U.S.C. §§ 1002(2)-(3) and 1003.

ERISA §§ 201 and 301, 29 U.S.C. §§ 1051 and 1081, provide for the general applicability of Parts 2 and 3, 29 U.S.C. §§ 1051-86, subject to some limitations. In relevant part, these sections exclude "IRAs" which meet the definition set forth in Internal Revenue Code § 408.[5] Therefore, it is necessary to determine whether the Plan qualifies as an "IRA" under I.R.C. § 408.

**D. INTERNAL REVENUE CODE § 408**

Internal Revenue Code § 408 defines the terms "individual retirement account" and "individual retirement annuity." The definitions contain various requirements which must be met in order to receive the IRA appellation. 26 U.S.C. § 408.[6]

4. 29 U.S.C. § 1003 states:

(a) Except as provided in subsection (b) of this section and in sections 1051, 1081, and 1101 of this title, this subchapter shall apply to any employee benefit plan if it is established or maintained—
(1) by any employer engaged in commerce ... or
(2) by any employee organization or organizations representing employees engaged in commerce ... or
(3) both.
(b) [describing exemptions not relevant here].

5. 29 U.S.C. § 1051 provides:

This part [2] shall apply to any employee pension benefit plan described in section 1003(a) of this title, (and not exempted under section 1003(b) of this title), other than—
...
(6) an individual retirement account or annuity as described in section 408 of Title 26, or a retirement bond described in section 409 of Title 26 . . . .

29 U.S.C. § 1081 provides:

(a) Plans excepted from applicability of this part. This part [3] shall apply to any employee pension benefit plan described in section 1003(a) of this title, (and not exempted under section 1003(b) of this title), other than—
...
(7) an individual retirement account or annuity as described in section 408(a) [sic] of Title 26, or a retirement bond described in section 409 of title 26 . . . .

6. I.R.C. § 408 states:

Individual retirement accounts.
(a) Individual retirement account.—For purposes of this section, the term "individual retirement account" means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets the following requirements:

(1) Except in the case of a rollover contribution described in subsection (d)(3), in section 402(c), 403(a)(4) or 403(b)(8), no contribution will be accepted unless it is in cash, and contributions will not be accepted for the taxable year in excess of $2,000 on behalf of any individual.
(2) The trustee is a bank (as defined in subsection (n)) or such other person who demonstrates to the satisfaction of the Secretary that the manner in which such other person will administer the trust will be consistent with the requirements of this section.
(3) No part of the trust funds will be invested in life insurance contracts.
(4) The interest of an individual in the balance in his account is nonforfeitable.
(5) The assets of the trust will not be commingled with other property except in a common trust fund or common investment fund.
(6) Under regulations prescribed by the Secretary, rules similar to the rules of section 401(a)(9) and the incidental death benefit requirements of section 401(a) shall apply to the distribution of the entire interest of an individual for whose benefit the trust is maintained.
(b) Individual retirement annuity.-For purposes of this section, the term "individual retirement annuity" means an annuity contract, or an endowment contract (as determined under regulations prescribed by the Secretary), issued by an insurance company which meets the following requirements:
(1) The contract is not transferable by the owner.
(2) Under the contract-
(A) the premiums are not fixed,
(B) the annual premium on behalf of any individual will not exceed $2,000, and
(C) any refund of premiums will be applied before the close of the calendar year following the year of the refund toward the payment of future premiums or the purchase of additional benefits.
(3) Under regulations prescribed by the Secretary, rules similar to the rules of section 401(a)(9) and the incidental death ben-

■ Because Judge Armstrong had held that Appellants "cannot avoid dismissal by attempting to present inconsistent facts in their opposition brief" (May 2, 1997 Order of Judge Armstrong, at 12), Judge Breyer held that Judge Armstrong's decision was law of the case and agreed that Appellants could not contend that the Plan was not an IRA plan. See *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir.1990) (judicial estoppel bars a party from making a factual assertion in a legal proceeding "which directly contradicts an earlier assertion made in the same proceeding or a prior one"); see also *Thomas v. Farley*, 31 F.3d 557, 558–9 (7th Cir.1994)("[I]f a plaintiff does plead particulars, and they show that he had no claim, then he is out of luck—he has pleaded himself out of court."). Both judges correctly held that Appellants could not contradict their earlier allegations in an effort to survive summary judgment.

■ The District Court (Judge Breyer) continued and also correctly found that although "plaintiffs have indicated at various times that the Plan is not an IRA under the Internal Revenue code, 26 U.S.C. § 408 .... neither plaintiffs' opposition to this summary judgment motion, nor any other document filed by plaintiffs with the Court, provides any specific support for their argument."

Appellants argue that the District Court erred in failing to view the evidence in the light most favorable to the Appellants. They assert that the District Court improperly held that the Appellants were required to produce evidence that the Plan failed to meet the criteria of I.R.C. § 408.

However, the District Court properly applied the summary judgment standard. The Supreme Court in *Celotex Corp. v. Catrett* held that "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial." 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (citations and internal quotations omitted).

In support of their motions for summary judgment, Appellees presented considerable evidence that the Plan qualifies as an IRA within the definition set out at I.R.C. § 408. Appellants contend that Appellees presented only the CBA. This contention overlooks the Group Individual Retirement Annuity Policy which had been presented without opposition to the court. Having offered both the CBA and the Annuity Policy, Appellees laid out specifically those provisions of the documents which meet the six requirements of I.R.C. § 408(b). Neither Appellants' briefs nor the Record reveal any evidence contradicting the inference that the Plan qualifies under I.R.C. § 408(b).

It is telling that Appellants, in their Declaration In Opposition To All Defendants Motions For Summary Judgment, present facts which indicate that the Plan fails Regulation § 2510.3–2, but not I.R.C. § 408.[7] EOR 193–95. Clinging to the inaccurate assertion that failing § 2510.3–2 is sufficient to make the Plan subject to all parts of Title I of ERISA, Appellants as-

---

efit requirements of section 401(a) shall apply to the distribution of the entire interest of the owner.

(4) The entire interest of the owner is nonforfeitable.

Such term does not include such an annuity contract for any taxable year of the owner in which it is disqualified on the application of subsection (e) or for any subsequent taxable year. For purposes of this subsection, no contract shall be treated as an endowment contract if it matures later than the taxable year in which the individual in whose name such contract is purchased attains age 70 1/2; if it is not for the exclu-

sive benefit of the individual in whose name it is purchased or his beneficiaries; or if the aggregate annual premiums under all such contracts purchased in the name of such individual for any taxable year exceed $2,000.

**7.** Declarant quotes a document apparently provided to Plan participants by the insurance company providing the policy (Defendant Great–West) which indicates that the Plan may be subject to some ERISA provisions. Declarant fails to assert or produce evidence that the Plan is subject to the provisions at issue here.

serted in vain facts which even when viewed in a light most favorable to Appellants do not support their claims and therefore are not "material."

■ Additionally, Appellants argue on appeal that the Plan does not constitute an IRA under I.R.C. § 408 because there is no written trust document. Section 408, however, reveals that the written trust requirement appears in § 408(a) which refers to individual retirement accounts. Appellees do not claim section 408(a) status, but rather rely on § 408(b) which refers to individual retirement annuities. Again, Appellants' assertion is not "material."

In support of their motions for summary judgment, Appellees produced evidence in the form of the CBA and the Annuity Policy that indicates the Plan meets the requirements set forth in I.R.C. § 408. Appellants did not counter with anything more than mere allegation. Therefore, the District Court correctly found that Appellants had failed to raise a genuine issue of fact as to whether the Plan was an IRA as defined in I.R.C. § 408. The uncontroverted evidence presented by the Appellees indicated that the Plan was an IRA under § 408. The District Court did not err in treating it as such.

### E. MISPLACED RELIANCE ON REGS. § 2510.3–2

Appellants urge reversal because the District Court misquoted a part of Regs. § 2510.3–2(a) and should not have relied upon § 2510.3–2(d) as providing the exclusion from Parts 2 and 3 of Title I of ERISA. Although the language of the district court was not flawless, it is clear that the District Court reached the proper conclusions with respect to the applicability of the relevant provisions of ERISA. The District Court clearly understood the structure of ERISA—some IRAs are completely excluded from coverage and some IRAs (such as the Plan at issue here) are covered by Title I of ERISA but excluded from Parts 2 and 3.

The District Court correctly determined that Appellants had failed to create a genuine issue of material fact as to the "IRA" status of the Plan under I.R.C. § 408. The Court also properly found that the Plan was an employee pension benefit plan subject to Title I of ERISA and that according to the language of §§ 1051 and 1081 the Plan was not subject to Parts 2 and 3.

Having concluded that the Plan is covered by Title I of ERISA but excluded from Parts 2 and 3, the analysis can turn to the Appellants' particular claims for relief.

### BREACH OF FIDUCIARY DUTY

■ Appellants' First Claim for Relief alleges that Defendants violated their fiduciary duties by failing to comply with various sections of ERISA. As the foregoing discussion shows, the Plan is not subject to Parts 2 and 3 of Title I of ERISA, 29 U.S.C. §§ 1051–86. Therefore, all of Appellants' claims with regard to the minimum participation and vesting requirements, specified reporting and disclosure requirements and minimum funding requirements contained in these sections are without merit.

Appellants' claim that a trust document is required under § 1103 is belied by the exclusionary language of § 1103(b)(3)(B) which excludes plans "which consists of one or more individual retirement accounts described in section 408 of Title 26. . . ." Appellants failed to counter this contention in their opposition to summary judgment. The District Court did not err in granting summary judgment on this claim.

As to the remaining assertions of the First Claim for Relief, we agree with the District Court that Appellants failed to present any detailed statement of what actions occurred and how such actions violated the law.

## PROHIBITED TRANSACTIONS

■ In their Second Claim for Relief, Appellants argued that Appellees' failure to contribute adequately to the Plan constituted prohibited transactions.

Because Appellants have failed to produce evidence to support the applicability of Parts 2 and 3 of Title I of ERISA and the minimum participation and vesting requirements therein, they have not established a duty to contribute sums greater than those acknowledged by Appellees. They fail to allege that funds are owing on account of those employees which Appellees concede are covered under the Plan.

■ Furthermore, even assuming that Appellees had failed adequately to contribute to the Plan, Appellants' prohibited transaction argument fails because such funds have not become "plan assets." Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation; this is true even where the employer is also a fiduciary of the plan. See *Local Union 2134, United Mine Workers v. Powhatan Fuel, Inc.*, 828 F.2d 710 714 (11th Cir.1987); *Professional Helicopter Pilots Ass'n v. Denison*, 804 F.Supp. 1447, 1453–54 (M.D.Ala.1992). Appellants' allegation that employer contributions were withheld cannot provide the basis for a prohibited transaction claim because no "plan assets" are involved.

## ACCOUNTING

Appellants' Third Claim for Relief alleges that monies are owed and that an accounting is necessary. Outside of the monies which Appellants erroneously believe are owed because of requirements contained in Parts 2 and 3 of Title I of ERISA, no specific allegation nor evidence has been presented to show what monies may be owed to Appellants. The District Court correctly granted summary judgment on this claim.

## FAILURE TO DISCLOSE DOCUMENTS

■ In their Fourth Claim for Relief, Appellants sought statutory penalties for Appellees' failure to provide certain plan documents as required by ERISA, 29 U.S.C. §§ 1024(b)(4) and 1025. Under 29 U.S.C. § 1132(c), only the plan "administrator" can be held liable for failing to comply with the reporting and disclosure requirements. See *Moran v. Aetna Life Ins. Co.*, 872 F.2d 296, 299 (9th Cir.1989).

We do not concur in the District Court's holding that there was no ERISA liability for failure to furnish nonexistent documents. We read *Jackson v. E.J. Brach Corp.* to require production and disclosure of current documents, but not to require the wasteful creation of historical documents. 937 F.Supp. 735 (N.D.Ill.1996). This court agrees that with respect to current documents, "[i]f any of these documents do not exist at the time of a request, it is consistent with the aims of ERISA to impose a penalty on the plan administrator ... [because t]here is nothing keeping the administrator from preparing a mandatory document where none previously existed, and it is his burden upon threat of penalty to do so." *Id.* at 740 n. 6.

■ Nonetheless, the District Court correctly granted summary judgment in favor of Appellees because the Appellants failed to create a genuine issue of material fact as to the "administrator" status of any of the Appellees. The Appellants employed a "scatter gun" approach and simply sued multiple defendants alleging that each was the administrator of the Plan. In opposition to the summary judgment motion, Appellants failed to provide evidence that any one or more particular Appellee was an administrator. Even if the Appellant is right that at least one of the Appellees must be a plan administrator, this group guilt theory alone will not survive summary judgment. Each Appellee denies that it is the administrator of the plan; and Rule 56 permits each and every "party who believes there is no gen-

uine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Therefore, Appellants were required to go beyond their mere allegations and raise a genuine issue of material fact about whether one or more of the defendants was an "administrator." See *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 257, 106 S.Ct. 2505.

■ Finally, Appellants argue that Appellees' failure to create the documents is the cause of Appellants' lack of evidence. However, when opposing summary judgment, Appellants failed to indicate that further discovery was needed or to allege the facts that such discovery was likely to uncover. Federal Rule of Civil Procedure 56(f) provides that if further discovery is required to oppose a summary judgment motion, the plaintiff must identify the facts and specific discovery that will create a genuine issue of material fact. See *Terrell v. Brewer,* 935 F.2d 1015, 1018 (9th Cir. 1991). Appellants failed to identify such facts and therefore could not survive a summary judgment motion.

### DECLARATORY AND INJUNCTIVE RELIEF

In their Fifth Claim for Relief, Appellants sought declaratory and injunctive relief. The District Court was correct in denying this relief. Appellants failed to produce any genuine issue of material fact with regard to the existence of any substantive ERISA violations.

### ATTORNEY FEES AND SANCTIONS

#### A. STANDARD OF REVIEW

■ This court reviews for abuse of discretion a District Court's decision on a motion for attorney fees. *Estate of Shockley v. Alyeska Pipeline,* 130 F.3d 403, 407–

08 (9th Cir.1997); *Corder v. Gates,* 104 F.3d 247, 248 (9th Cir.1996). This court reviews the District Court's analysis of the law de novo and its factual determinations for clear error. *Corder,* at 248 (citing *Kilgour v. City of Pasadena,* 53 F.3d 1007, 1010 (9th Cir.1995) and *Sablan v. Dept. of Finance of N. Mariana Islands,* 856 F.2d 1317, 1324 (9th cir.1988)).

#### B. ATTORNEY FEES UNDER ERISA

■ ERISA provides for attorney fees at 29 U.S.C. § 1132(g)(1).[8] In making its decision the District Court must analyze the five *Hummell* factors:

1. the degree of the opposing party's culpability or bad faith,

2. the ability of the opposing party to satisfy an award of fees,

3. whether an award of fees would deter others from acting in similar circumstances,

4. whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA, and

5. the relative merits of the parties' positions.

*Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980). See *Estate of Shockley v. Alyeska Pipeline,* 130 F.3d 403 (9th Cir.1997); *Corder v. Howard Johnson & Co.,* 53 F.3d 225 (9th Cir.1995).

■ Both Appellants' and Appellees' briefs recite at length the various arguments favoring their positions on each of the outlined factors. The record indicates that the judge evaluated each of the claims under the *Hummell* factors and based on that evaluation denied the post-judgment motion for attorney fees. The Court's conclusions find ample support in the record. This court need only look for an abuse-of-

---

**8.** 29 U.S.C. § 1132(g)(1) states:
In any action under this subchapter by ... a participant, beneficiary, or fiduciary, the

court in its discretion may allow a reasonable attorney's fee and costs of the action to either party.

discretion and neither the record nor the briefs reveal such an abuse.

Appellees argue that the Court applied too high a threshold to Appellees' motion for fees. This inordinately high standard, they contend, is evidenced in the Court's stated "hesitancy" to award fees against individual plaintiffs in these circumstances. This court's decision in *Alyeska Pipeline* held that "the playing field is level" under the *Hummell* factors and therefore the Court should not "favor[ ] one side or the other." 130 F.3d at 408. The Court's concession of hesitancy, however, does not indicate that it had abandoned these principles. In fact the Court cited the *Alyeska* language before embarking on its analysis of the *Hummell* factors. The statement of "hesitancy" in the context of a detailed analysis which describes and applies the appropriate standard demonstrates a natural caution in declaring "bad faith" on the part of lawyers rather than an error in its application of the law.

■■■■ Appellees also argue that no reasonable basis existed for the Court's conclusion that the Appellants acted in good faith in prosecuting this claim. In *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 25 F.3d 743, 749 (9th Cir. 1994), we held that in order to avoid a finding of bad faith under the *Hummell* factors, plaintiffs must have a reasonable belief that they could prove an actionable ERISA claim. While Appellants failed to prove any of their claims, the Record contains enough documentary material to support the Court's conclusion that a reasonable basis existed for Appellants to make their claims.

■■■■ Appellees assert that at least one of the Named–Appellants never authorized the Appellants' lawyers to name him as a plaintiff and that counsel prosecuted the claims at the bidding of a rival union. Appellants' lawyers attack this allegation as unsupported by evidence. While this dispute is serious and disturbing, Appellees have failed to create a record upon which this court could find that the District Court either abused its discretion or

made a clearly erroneous finding of fact. Although Appellees did try to depose Named–Appellant Cline on numerous occasions, it is not apparent that his failure to appear at the scheduled depositions indicates that he and the other named-plaintiffs did not authorize the suit. At any rate, if Cline truly did not authorize the suit, Appellees should have developed the record more thoroughly before making general demands for fees. The Record as it stands does not indicate that the Court abused its discretion when it denied attorney fees under § 1132(g)(1).

## C. ATTORNEY FEES UNDER 28 U.S.C. § 1927

■■■■ Appellees also contend that the Court erred in denying sanctions against the Appellants' lawyers under 28 U.S.C. § 1927. That statute provides that a court may impose sanctions on any attorney who unreasonably and vexatiously multiplies legal proceedings. Recklessness or bad faith is required to support a fee award under § 1927. *U.S. v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir.1986).

While Appellants' claims were unable to survive summary judgment, the record does contain evidence in the form of correspondence between the parties which discusses the concern among Appellees that employer contributions might invoke the applicability of ERISA provisions. The Court did not make a clearly erroneous finding when it refused to find Appellants' lawyers had acted in bad faith. Therefore, the Court's denial of sanctions under 28 U.S.C. § 1927 will not be disturbed.

## D. ATTORNEY FEES ON APPEAL

Finally, each party requests an award of attorney fees on appeal. We are satisfied that the appeal and cross-appeals are all non-frivolous and present arguable legal

theories. Therefore, all requests for fees on this appeal are denied, but the Appellees are entitled to their costs upon timely presentation of a cost bill.

### CONCLUSION

The grant of summary judgment in favor of Appellees was appropriate. The Court correctly found that Parts 2 and 3 of Title I of ERISA do not apply to the Plan at issue in these cases. After reviewing the record, the Court correctly found that no genuine issues of material fact existed. The District Court did not make a mistake of law nor did it abuse its discretion with respect to attorney fees.

AFFIRMED.

All motions for attorneys fees on appeal are denied and costs are granted to Appellees.