Susan **CAPIZZI**, Plaintiff,

v.

**COUNTY OF PLACER and Elaine Reed, Defendants.**

**No. CIV S-99-717 LKK/DAD.**

United States District Court, E.D. California.

March 26, 2001.

---

James McGlamery, Sacramento, CA, for plaintiff.

Dennis Keller, Amara & Keller, Auburn, CA, for defendants.

### ORDER

KARLTON, Senior District Judge.

Plaintiff sues her former supervisor and her former employer for discriminating against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* This matter comes before the court on defendants' motion for summary judgment. I decide the motion based on the papers and pleadings filed herein and after oral argument.

---

1. The facts as stated herein are the undisputed facts offered by the defendants and the additional facts offered by plaintiff which, for the purposes of this motion for summary judgment, are considered undisputed. *See*

### I.

### FACTS [1]

Plaintiff injured herself while carpeting the Placer County library in August or September of 1996. She was subsequently diagnosed with bilateral elbow tendinitis and given light duty assignments. On or about April 28, 1998, plaintiff took medical leave when her treating doctor determined that she was "permanently precluded from lifting over five pounds, no repetitive overhead lifting."

The traditional treatment for bilateral elbow tendinitis consists of three stages. The first stage is modification and anti-inflammatory medication, icing and use of brace or physical therapy. The second phase is cortisone injections. The third phase is surgical treatment (tennis elbow release surgery). Ninety to ninety-five percent of patients with carpal tunnel syndrome and tendinitis get well with traditional treatment. Eighty-five percent who undergo surgical treatment have significant, if not complete, relief.

Plaintiff was extremely reluctant to undergo cortisone injections and the surgical procedure. Plaintiff recalls telling Dr. Williams that she preferred not to have cortisone injections now or in the future. Plaintiff also disliked anti-inflammatory medicine because it upset her stomach. Given these predilections, plaintiff sought alternative treatment and her doctor referred her to Dr. Chu, whose treatments relied on acupuncture. Dr. Chu has remained plaintiff's treating physician. Plaintiff's condition did not improve and,

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a fact objected to by an opposing party is included in this section, then the court has overruled that objection.

as of July of 1999, plaintiff told Dr. Chu that she could not lift five pounds.

## II.

### SUMMARY JUDGMENT STANDARDS UNDER FED.R.CIV.P. 56

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Sicor Limited v. Cetus Corp.*, 51 F.3d 848, 853 (9th Cir.1995).

▮▮▮ Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' " *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322, 106 S.Ct. 2548. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immateri-

al." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323, 106 S.Ct. 2548.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *See also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Sicor Limited*, 51 F.3d at 853.

▮▮▮ In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11, 106 S.Ct. 1348; *See also First Nat'l Bank*, 391 U.S. at 289, 88 S.Ct. 1575; *Rand v. Rowland*, 154 F.3d 952, 954 (9th Cir.1998). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers*, 971 F.2d 347, 355 (9th Cir.1992) (quoting *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987)), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505; *see also Cline v. Industrial Maintenance Engineering &*

*Contracting Co.,* 200 F.3d 1223, 1228 (9th Cir.2000).

■ In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank,* 391 U.S. at 290, 88 S.Ct. 1575; *See also T.W. Elec. Serv.,* 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e) advisory committee's note on 1963 amendments); *see also International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir.1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); *See also In re Citric Acid Litigation,* 191 F.3d 1090, 1093 (9th Cir.1999). The evidence of the opposing party is to be believed, *see Anderson,* 477 U.S. at 255, 106 S.Ct. 2505, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam* )); *See also Headwaters Forest Defense v. County of Humboldt,* 211 F.3d 1121, 1132 (9th Cir.2000). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987).

■ Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

## III.

## ANALYSIS

Defendants move for summary judgment on plaintiff's claim of discrimination in violation of the ADA. They argue that plaintiff is neither disabled nor perceived as such. I address their arguments below.

### A. DISABILITY

■ Plaintiff claims that she is disabled under the Act by virtue of her substantially-limited ability to work. Defendants move for summary judgment arguing that plaintiff's bilateral elbow tendinitis does not qualify as a disability. I cannot agree.

The ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability...." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Disability, in turn, is defined as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

As I explain below, the EEOC has issued regulations bearing upon disposition of this case. Before considering them, however, I must examine what weight they are to be accorded.

■ The Supreme Court has noted that although Congress gave the EEOC authority to promulgate Title I regulations, *See* 42 U.S.C. § 12116, and the Department of Justice Title II regulations, *See* 42 U.S.C. § 12134, no agency was given the authority to issue regulations implementing the generally applicable provisions of the ADA falling outside Titles I–V. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2145, 144 L.Ed.2d 450 (1999). Accordingly, the High Court concluded that "no agency has been delegated authority to interpret the term disability." *Id.* (internal quotation marks omitted). Given the absence of congressional authority, the regulations and interpretive guidelines addressing the ADA's definition of disability are not binding on this court. *See id.* Because the *Sutton* Court did not address whether such regulations and guidelines, while not binding, are nevertheless entitled to deference, I must now address that issue.

■ When, as here, Congress has not delegated specific legislative authority to an agency, the federal courts are free to reject the agency judgment and proceed without its guidance. This is the inevitable consequence of Article III reposing

the judicial power of the United States in its courts. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). It has been said that a court should consider adopting the position taken in regulations and interpretive guidelines if the agency positions are "wise and correct." Davis, 1 *Administrative Law Treatise*, 239 (1994). The weight to be accorded an agency's nonbinding interpretation depends upon the "thoroughness evident in its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

Prior to *Sutton*, the Supreme Court had noted the bifurcated responsibility for administering the ADA. It observed, however, that the "the well-reasoned views of the agencies implementing ... [the ADA] constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Bragdon v. Abbott*, 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)(quoting *Skidmore*, 323 U.S. at 139–140, 65 S.Ct. 161) (internal quotation marks omitted). Thus as a general matter, deference to the EEOC's guidelines appears appropriate. As I now explain, however, the relevant regulations present what appears to be a question as to whether they are "well reasoned" and thus "wise and correct."

The plaintiff maintains that she is disabled as to the life activity of working, and under the EEOC regulations, "major life activities" include working. *See* 29 C.F.R. § 1630.2(i).[2] In *dicta*, the *Sutton* Court

---

2. The EEOC has provided a representative list of "major life activities," including "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R.

§ 1630.2. The list is illustrative, not exhaustive. *See Bragdon*, 524 U.S. at 639, 118 S.Ct. 2196. While it may be that the plaintiff might qualify as disabled by virtue of limitations on performing manual tasks, she has not assert-

noted that there may be some conceptual difficulty in defining "major life activities" to include work, since it seems "to argue in a circle to say that if one is excluded, for instance, by reason of [an impairment, from working with others] ... then that exclusion constitutes an impairment, when the question you're asking is, whether the exclusion is by reason of handicap." *Sutton*, 119 S.Ct. at 2139 (citation and internal quotation marks omitted).

The EEOC itself has expressed reluctance to define "major life activities" to include working and has suggested that working be viewed as a residual life activity, as a last resort, only "[i]f an individual is not substantially limited with respect to any other major life activity." *Id.* (citing 29 C.F.R. Pt. 1630, App., § 1630.2(j)(1998) ("If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working."))

From all the above, it appears relatively clear that this court should be cautious in adopting the EEOC's "last resort" construction of disability. I note, however, that the Ninth Circuit, while recognizing the *Sutton dicta*, has considered working a major life activity without discussion, but also without hesitancy. *See Broussard v. University of California*, 192 F.3d 1252, 1255–6 (9th Cir.1999). Moreover, no published Ninth Circuit opinion has rejected working as a major life activity. Accordingly, I conclude that until directed otherwise it is appropriate for district courts to continue to give deference to the EEOC regulation.

Under the regulations, a claimant establishes that she is disabled with respect to working by demonstrating that she is

significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i). According to the EEOC, the court may consider the following factors in determining whether an individual is substantially limited in the major life activity of working:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

In reliance on these standards, the plaintiff offers the declaration of her vocational rehabilitation expert, Gary Nebbelink, who opines that plaintiff is substantially limited from performing a broad class of jobs as a result of her bilateral elbow tendinitis. In light of plaintiff's proffer, defendants' motion is denied.

ed such a claim and it would thus appear

inappropriate for the court to consider it.

## B. MITIGATING MEASURES

 Defendants argue that plaintiff is not disabled because she has failed to avail herself of effective corrective treatments. The High Court has held that, "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act." *Sutton*, 119 S.Ct. at 2146. The defendants ask the court to extend *Sutton* and hold that it is plaintiff's duty to take whatever mitigating measures might be available, and that a failure to do so bars plaintiff's claim. The question of what, if any, mitigation is required and the effect of a failure to mitigate, is apparently open in this circuit. Below, I explore the contours of that issue.

 I begin by noting that liability in the instant matter is premised on a statute, the ADA, and thus at least initially the issue is one of statutory interpretation. The statute provides that the remedies available under 29 U.S.C. § 794a shall accrue to victims of disability discrimination. *See* 42 U.S.C. § 12133.[3] In turn, § 794a makes the remedies available under 42 U.S.C. § 2000e–16 the measure of remedies available.[4] That section provides for a "civil suit" under 42 U.S.C. § 2000e–5,[5] brought by the person aggrieved by the employment action.[6] The statute also specifically provides various remedies including back and front pay. Finally, the statute provides for a reduction of back pay awarded in a sum equal to that the plaintiff could have earned by the application of reasonable diligence.[7] Two lessons are learned from the statute. First, mitigation

3. The statute provides:

> The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title.

42 U.S.C. § 12133.

4. The statute provides:

> The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–16), including the application of sections 706(f) through 706(k) (42 U.S.C. § 2000e–5(f) through (k)), shall be available[ ].... In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate.

29 U.S.C. § 794a(a)(1).

5. The statute provides in pertinent part:

> ... an employee or applicant for employment, if aggrieved, may file a civil action as provided in section 2000e–5 of this title.

42 U.S.C. § 20000e–16(c).

6. 42 U.S.C. § 2000e–5 provides that "... a civil action may be brought by the person claiming to be aggrieved...."

7. The statute provides in pertinent part:

> (1) "If the court finds that the respondent has intentionally engaged in ... an unlawful employment practice ... the court may ... order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay or any other equitable relief as the court deems appropriate ... Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable...."

42 U.S.C. § 2000e–5(g).

Compensatory, and in certain cases, punitive damages are also available for violations of the ADA. *See* 42 U.S.C. § 1981a(a)(2)("In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 [42 U.S.C.A. §§ 2000e–5 or 2000e–16] (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12117(a)), and section 794a(a)(1) of Title 29, respectively) against a respondent who engaged in unlawful intentional discrimi-

is measured by reasonable diligence, and second, a failure to mitigate works a reduction in back pay, but does not defeat the claim.

The conclusion that a failure to mitigate does not defeat the cause of action is supported by *Sutton*. There the Court observed that in the ADA "the phrase 'substantially limits' appears ... in the present indicative verb form, ... [indicating that] the language is properly read as requiring that a person be presently—not potentially or hypothetically—substantially limited in order to demonstrate a disability." *Id.* 119 S.Ct. at 2146. It should follow from the fact that the question of disability addresses plaintiff's current condition, that the fact that a particular procedure would mitigate the condition cannot prevent a finding that the plaintiff is presently disabled, though it might effect the damages awarded upon a finding of liability.

Moreover, the requirement of reasonable diligence would appear to preclude a requirement that a plaintiff undertake a risky or uncertain medical procedure. Thus, in the instant matter, the mere possibility of corrective measures does not undermine an otherwise qualifying disability. Put directly, it is far from certain that corrective surgery presented plaintiff with mitigation as a matter of "reasonable diligence."

Defendants aver that eighty-five percent of people with bilateral elbow tendinitis have significant or complete relief after completing surgical treatment. In response, plaintiff offers the declaration of Dr. Geoffrey Wiedeman, who testifies that, based upon his examination of the plaintiff,

he does not believe her to be a candidate for corrective surgery. In light of Dr. Wiedeman's testimony and the obligation of this court to draw all inferences in favor of the non-moving party, *see Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (citations omitted), the court finds a triable issue of fact concerning whether surgery would have so clearly corrected plaintiff's bilateral elbow tendinitis that a failure to undertake the surgery was unreasonable.[8] In sum, the issue of whether plaintiff has been reasonably diligent is for the trier-of-fact.

## C. PERCEIVED AS DISABLED

■ Defendants also move to dismiss plaintiff's regarded-as-disabled claim and argue that their perception of her disability is not actionable under the ADA because it was based on a doctor's medical report. Again, I cannot agree.

Neither the regulations nor the statute require that the misperception be based on myth or stereotyping. *See* 42 U.S.C. §§ 12101 *et seq.*, 29 C.F.R. § 1630.2(*l*). Rather, it is the discrimination resulting from the misperception of disability that is said to be caused by societal myths and stereotypes.

### ·IV.

### ORDERS

Accordingly, the court hereby makes the following ORDERS: ·

1. Defendants' motion for summary judgment is DENIED; and

---

nation .... the complaining party may recover compensatory and punitive damages .... in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e–5(g) ], from the respondent.")

**8.** Nor has this court been presented with any negative effects of the surgery. *See Sutton*, 119 S.Ct. at 2146 (court must consider both negative and positive effects of corrective measures).

2. A final Pretrial Conference is SET for May 21, 2001 at 11:00 a.m. in Chambers.

IT IS SO ORDERED.

DATED: March 22, 2001.