**In re MCORP FINANCIAL, INC., MCorp Management, and MCorp, Debtors.**

**UNITED STATES of America, Movant,**

v.

**MCORP FINANCIAL, INC., MCorp Management, MCorp, Federal Deposit Insurance Corporation, Unsecured Creditors Committee, and Bank One, Texas, Respondents.**

**Civ. A. No. H–90–2929.**

United States District Court,
S.D. Texas,
Houston Division.

July 18, 1994.

Allan Brent Diamond, Houston, TX, for debtor MCorp.

Lynne Liberato, Houston, TX, for Bank One, Texas.

Brooke E. Smith, Houston, TX, for FDIC.

Waymon DuBose, Dept. of Justice, Tax Div., Dallas, TX, for U.S.

DISBURSEMENT OF INTERPLEADER

HUGHES, District Judge.

1. *Introduction.*

With one hundred yards to go in a marathon, the winning creditors in this bankruptcy have turned the final corner only to find another participant in front of them—an indifferent runner who appeared to have dropped out long ago. Like Rosie Ruiz in the Boston Marathon, Bank One wants to share in the winnings by starting, disappearing half-way, and showing up mysteriously only at the finish line. Bank One is out of the money.

2. *Tax Refunds.*

MCorp filed consolidated tax returns for itself and its subsidiaries, including the MBanks. After the FDIC's seizure of most of the MBanks, one of the disputes was the amount of income tax refund due MCorp and its subsidiaries for the 1981 through 1984 tax

years, and another dispute was who should receive it. MCorp had already received some of the refund from the Internal Revenue Service for those years but claimed over $17 million more. To complicate matters, the FDIC claimed the residue of the refund as receiver of the closed banks, while the debtor claimed the refund on behalf of the debtor as the taxpayer.

These disputes were tried to this court, which rendered a ruling that the remaining refund would be the property of the estate and would be $14.5 million. A final judgment was postponed as the court took up other of the numerous claims and counter-claims. After that rendition and several other trials and proceedings, the FDIC and MCorp have settled their differences as part of a jointly proposed plan for the debtor. While the confirmation was being appealed, a global settlement among all parties to the estates was reached, agreeing that the money from the IRS is to go to the debtor, for eventual disbursement to creditors, of course. The IRS and the debtor have agreed to a disposition of most of the amount of the refund; of that that may remain due, the liquidating trustee of the estates will have to decide whether to pursue the IRS for a further refund.

The IRS, wanting to avoid any more entanglement in litigation over money that it admits does not belong to the government, interpleaded over $9 million into the registry of the court. The debtor wants that money so that it may fund part of the initial distribution under the confirmed amended plans. That distribution is now scheduled for July 15, 1994.

### 3. *Enter Bank One.*

Following the closing of the MBanks, the FDIC established an operating shell, known as the bridge banks. About four months later, Bank One bought assets and assumed liabilities of the dead banks from the FDIC. The agreement by which Bank One acquired its interest in the banks specified that the FDIC retained all claims against the debtors. Bank One timely filed a claim in the bankruptcy for the refund; it argued that, even though MCorp filed the joint return, the refund should be allocated directly to the constituent banks.

### 4. *Exit Bank One.*

As was to be expected in a transaction of this magnitude and complexity, Bank One and the FDIC disagreed over what assets Bank One had actually purchased from the FDIC receiver. In a settlement between Bank One and the FDIC, property was allocated, and Bank One assigned many of the claims it had asserted belonged to it to the FDIC. Most important, as part of the settlement, Bank One withdrew its claim against the estates for tax refunds. In fact, except for one side issue about the Fortex Notes, which has been settled, Bank One has spent the last three years on the sideline while the debtors, the FDIC, and a host of creditors, real and imagined, have fought, regrouped, and refought in court.

Specifically, Bank One stood aside as the FDIC sued over the sale of the trust departments, the valuation of southeast Texas real estate, obligations under the leases of the headquarters buildings in Dallas, which in part were occupied by Bank One, and the ownership of the tax refunds. Despite having appeared formally and having had notice of everything, Bank One has failed to object to any of these legal proceedings and failed to claim a property interest in any disputed asset—except the Fortex Notes—until now.

### 5. *Re–Enter Bank One.*

One week before the initial cash distribution under the confirmed amended plans is to take place, Bank One makes a new claim to the refunded tax money in the registry. Bank One now claims that the money is its property and that the refund claim was never and should never have been considered property of the estates, in the technical bankruptcy sense. Since the money is in the registry of the court and is not in the possession of the estates, Bank One argues that it does not need to join the bankruptcy process to obtain it. In essence, Bank One argues that to win the marathon, it need not participate in the race.

### 6. *Procedure.*

If Bank One is wrong, its only recourse to get its property was through the bankruptcy process. If Bank One was required to join the herd in jumping over the bankruptcy hurdles, it has waived its rights to the property. Bank One filed a plausible claim on time, but it withdrew that claim—without dispute. With no active claim on file and with the deadline for a claim having passed over four years ago, Bank One has no viable claim to the refund from the estates. The bankruptcy code has a proceeding for the determination of title questions. To the extent that Bank One now asserts an independent title in the terms of a property right in the tax refund, it has not bothered to pursue a trial of right to property. The bankruptcy code requires that contingent, potential holders of claims run the race.

### 7. *Estoppel.*

Assume that Bank One is correct on the facts and substantive law of its claim: The refund is Bank One's property and not part of the estate. Bank One's interest in its sole, independent property has been exhibited to the other interested parties to these bankruptcies by these actions:

A. Bank One filed a proof of claim in the bankruptcies, implicitly agreeing that it had to go through the bankruptcy process to obtain its property;

B. Bank One settled its dispute with the FDIC over what assets it had purchased; as a result of that settlement, it withdrew its claim for the tax refund;

C. Bank One silently allowed the FDIC and the debtor to litigate between themselves over the tax refund, including title and quantum between themselves and with the IRS;

D. Bank One failed to object when the debtors and the FDIC filed a notice of settlement in the bankruptcy court that clearly stated that any IRS refund would be the property of the debtors; and

E. Bank One failed to object to either the confirmation of the August 1993 plans that were confirmed or to the confirmation of the amended plans.

■ Not only was Bank One fully informed of the confirmation process, it was actively litigating a variety of direct and remote disputes with and about the estates. It was sent copies of the proposed plans and amended plans, which incorporated the settlement. Bank One is estopped from now being heard to assert that the preceding five years of litigation was meaningless because Bank One's title to the property rose above the bankruptcy process. To avoid being bound by the result of the process, Bank One had to find some opportunity to inform somebody that it had a claim to the property; the obvious four ways were to (a) contest the refund's being property of the estates, (b) file a claim in the bankruptcy, (c) sue the IRS, or (d) sue the FDIC. If notice had been given, even by an advertisement in the *Wall Street Journal,* that Bank One had a title that was superior to the bankruptcy process, this pretension could have been litigated long before the debtors, creditors, FDIC, IRS, and the court spent their resources on a solution to the ownership question.

■ Estoppel occurs when the conduct of a party is inconsistent with the claim the party afterward asserts and sues upon. *See Pitts v. American Security Life Ins. Co.,* 931 F.2d 351, 357 (5th Cir.1991). Bank One's abandonment of its claim in bankruptcy, without any further explanation, entitled all parties to proceed as if Bank One had abandoned *any* claim to the refund, within or without the bankruptcy process. Bank One is estopped from using the courts to litigate its new theory of ownership at this late date.

### 8. *The Allocation Agreement.*

Bank One points to the tax allocation agreement between MCorp and its subsidiaries, including the banks, to show that (a) the individual MBanks had the full, direct property interest in a tax refund and that (b) MCorp had no interest whatsoever in any refund. The agreement reads:

5. *Payment of Current Provision for Income Taxes:* Subsidiary further agrees that current tax liability shall be maintained at levels sufficient to pay Subsid-

iary's share of the consolidated Current Provision for Income Taxes. These balances shall be maintained on the books of the accruing subsidiary until the time of cash settlement with Management. *Cash settlement between Management and the Subsidiary shall occur at the approximate time that such cash is needed by Management* to pay the Provision for Income Taxes currently due to the federal taxing authorities, *or* in *the* case of tax losses, at such *time* as *cash is received by Management from either the taxing authorities or other members of Affiliated Group* whose profits are sheltered by the losses of other members of Affiliated Group.

May 1985, Intercompany Tax Allocation Agreement, Debtors' Exhibit 9, Claim AA & 9, at ¶ 5 (emphasis added).

Bank One agrees that, since MCorp was the only taxpayer, MCorp was the only entity that had a right to a refund. Bank One argues, however, that the language of paragraph five makes MCorp merely the agent for the constituent banks, with no property interest in the refund. Even if this were true, the IRS could pay the refund only to MCorp, the consolidated taxpayer. If the money is the property of the MBanks, MCorp would still have possession of the property before disbursing it. Once MCorp was in bankruptcy, the MBanks and consequently Bank One had to go through the bankruptcy process to retrieve their property, an avenue that Bank One abandoned. If the refund had been paid in full the day before the debtors filed their petition in bankruptcy, the funds would be the property of the estate; the cash from the refund would be among the assets that the court would marshal to pay the claims, which were huge, varied, and numerous.

Bank One asserts that a close reading of paragraph five indicates that only money in the *possession* of MCorp would be subject to the clause, and that its money is in the registry of the court. Bank One says that because it owns the property and because MCorp has yet to receive it, the court should pay it to Bank One. This the court declines to do. Bank One misconstrues both the paragraph and the bankruptcy code.

Paragraph five rather clearly sets up an account between MCorp as the taxpayer and its subsidiaries as its constituents. Depending on the performances of all MCorp operations, bank and non-bank alike, an outcome of that accounting can be a balance due to MBank Dallas from MBank Houston, MCorp, MCorp Financial, or any of the several dozen parts of the MCorp group. Neither paragraph five nor any other part of the allocation agreement suggests that MCorp is a trustee to the subsidiaries, holding mere nominal claim to the refund. The contract created an account, a debtor-creditor relation, which is the quintessential business of bankruptcy.

Absent an express agreement, the existence of a consolidated return does not imply an unequivocal right to the refund in the taxpayer. *See Capital Bancshares v. Federal Deposit Ins. Corp.,* 957 F.2d 203, 207 (5th Cir.1992). The refund may indeed properly be an absolute credit to Bank One, but vesting a title in the refund in Bank One does not mean that the IRS is to pay it directly to Bank One or through the court to Bank One. The refund must be paid to the estate; then if Bank One is the owner and wants to enforce its property right, it must file a claim. This it did, but it abandoned the claim, vanishing forever from among the contenders.

In the instance of a solvent parent corporation that seeks to retain a refund due to the bankrupt subsidiary's losses, between the parent and third-party creditors, allowing the solvent parent to keep it unjustly enriches the parent. The equities of unjust enrichment do not appear between a post-bankruptcy purchaser out of a receivership and the creditors of the estate. *In re Bob Richards,* 473 F.2d 262, 265 (9th Cir.), *rev'd on other grounds,* 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986 (1953). In this case, the entity receiving the refund is in bankruptcy and the entity demanding the benefit is a solvent successor in interest to a cluster of assets from a separate insolvency proceeding.

9. *The Purchase Agreement.*

In the 1980s, the FDIC closed one-third of the banks in Texas. In most cases it found

another bank that would either pay for the rights of the failed bank or would accept a payment to take the assets and assume the liabilities. The FDIC used a standard purchase and assumption agreement for most of the deals. The acquisition of some of the closed MBanks by Bank One was unexceptional. The FDIC retained the assets of the receivership estate of the closed banks that were claims against the officers, directors, and parent corporations. The claim that MCorp owed MBank Houston a payment under the allocation agreement would be a claim retained by the FDIC. The FDIC understood that, and it was allowed to contest the amount and allocation in court. Pertinent to this motion, Bank One understood that as well.

### 10. *The Record.*

It is imperative to remember that this opinion is based not only on the hearing held on the motion and objection to the disbursement nor solely on the court's recollection and the record of the tax refund litigation. Rather, the record supporting this opinion is the record of the entire bankruptcy proceedings, including past in-court discussions of who had a right to the tax refund and who had waived their rights, whether occurring in the confirmation hearing or hearings on scheduling, motions, and settlement. The view of the marathon from the crest of the mountain of record clearly captures where the contestants are and how they got there.

### 11. *Conclusion.*

The marathon is over. Only those who ran all the way are entitled to the debris of the debtors. Bank One's objection to disbursement of the funds in the registry will be denied. The funds will be disbursed for distribution under the confirmed amended plan.