**In re IMPERIAL CAPITAL BANCORP, INC., a Delaware corporation, Debtor.**

**Imperial Capital Bancorp, Inc., a Delaware corporation, Plaintiff,**

**v.**

**Federal Deposit Insurance Corporation, as Receiver for Imperial Capital Bank, Defendant.**

**Civil No. 10cv1991–CAB (WMc).**

United States District Court, S.D. California.

May 16, 2013.

Kyra Andrassy, Robert S. Marticello, Philip E. Strok, Weiland Golden Smiley Wang Ekvall & Strok, LLP, Costa Mesa, CA, Daniel R. Brown, Brown Legal Advisors, LLC, Chicago, IL, Carol Chow, Gregory Kent Jones, Gary E. Klausner, Stutman Treister & Glatt Professional Corporation, Los Angeles, CA, James D. Higgason, Diamond, McCarthy LLP, Houston, TX, for Plaintiff.

Jeffrey Stephen Isaacs, Gerald P. Kennedy, Procopio Cory Hargreaves and Savitch LLP, San Diego, CA, for Defendant.

## ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT [Doc. Nos. 77 and 78]

CATHY ANN BENCIVENGO, District Judge.

On November 6, 2012, Plaintiff Imperial Capital Bancorp ("Imperial") filed a motion for summary judgment as to the First Claim for Relief in the Complaint seeking a declaratory judgment regarding ownership of certain tax refunds. [Doc. No. 77.][1] On December 19, 2012, Defendant Federal Deposit Insurance Corporation, as Receiver for Imperial Capital Bank ("Bank") filed an opposition to Imperial's motion. [Doc. No. 83.] On January 16, 2013, Imperial filed a reply to the opposition. [Doc. No. 85.]

On November 7, 2012, the Bank filed a motion for summary judgment as to the First Claim for Relief in the Complaint seeking declaratory judgment regarding ownership of certain tax refunds. [Doc. No. 78.] On December 19, 2012, Imperial

1. All evidentiary citations are to the CMECF docket numbers.

filed an opposition to the Bank's motion. [Doc. No. 82.] On January 16, 2013, the Bank filed a reply to the opposition. [Doc. No. 87.][2]

On January 20, 2013, the Court held oral argument with regard to both motions for summary judgment. [Doc. No. 89.] Daniel Brown, Esq., appeared on behalf of Imperial. Jeffrey Isaacs, Esq., and Gerald Kennedy, Esq., appeared on behalf of the Bank.

On March 28, 2013, Imperial filed a notice of supplemental authority. [Doc. No. 90.] On April 2, 2013, the Bank filed an opposition to the notice. [Doc. No. 91.] On April 2, 2013, Imperial filed a reply to the opposition. [Doc. No. 92.]

These motions concern one question: Whether approximately $30 million of income tax refunds belong to Imperial's bankruptcy estate, or whether those refunds instead belong to the Bank. Both parties agree that summary judgment of this claim is appropriate. [Doc. No. 77–1 at 8; Doc. No. 83 at 8.] After reviewing all of the submissions of the parties and oral argument of counsel, the Court **HEREBY GRANTS** Imperial's motion for summary judgment regarding ownership of certain tax refunds and **DENIES** the Bank's motion for summary judgment.

## I. BACKGROUND

Imperial was and is the direct parent company of the Bank. [Doc. No. 77–4 at 4]. Imperial is the designated parent company in the Imperial Bancorp, Inc. consolidated tax group, which includes the Bank. *Id.* Imperial filed federal and state consolidat-ed or combined tax returns on behalf of itself and the Bank for the 2004–2009 tax years. [Doc. No. 77–4 at 103.] On December 18, 2009, the California Department of Financial Institutions closed the Bank and the Defendant FDIC was appointed as receiver. [Doc. No. 77–3 at 7.] Also on December 18, 2009, Imperial filed a petition for relief under chapter 11 of the Bankruptcy Code. *Id.*

On August 24, 2010, Imperial and the FDIC (the Bank) entered into a stipulation in Imperial's chapter 11 case, pursuant to which tax refunds received by Imperial would be placed in a joint escrow account pending resolution of this litigation. [Doc. No. 77–4 at 118.] On April 19, 2011, Imperial received a $17,639.137.08 federal tax refund and deposited it into the Escrow Account. [Doc. No. 77–4 at 134.] On July 18, 2011, Imperial received a $12,244,171.92 federal tax refund and deposited it into the Escrow Account. *Id.* The tax refunds contained in the Escrow Account are hereafter referred to as the "Tax Refunds."

## II. DISCUSSION

### A. Standard of Review.

Summary judgment/adjudication is proper only upon a the movant's showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.

---

**2.** The original Complaint in the Bankruptcy proceeding contains two claims for relief: (1) declaratory judgment regarding the ownership of certain tax refunds; and (2) violation of the automatic stay. [Adversary Proceeding No. 10–90386–LA, Doc. No. 1.] Plaintiff does not address the second claim for violation of the automatic stay. While Defendant does address that claim [*See* Doc. No. 78–1 at 31], the Court does not consider the matter adequately briefed and does not address that claim for relief in this order. The parties may file a separate motion with regard to that claim, if necessary.

2505, 91 L.Ed.2d 202 (1986); *Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Id.*, citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"*Where the moving party has the burden*—the plaintiff on a claim for relief or the defendant on an affirmative defense—*his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.*" *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986) (emphasis in original), quoting from *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 FRD 465, 487–488 (1984).

The opposing party may not rest upon its pleadings. Rather, to avoid summary judgment, it must *affirmatively show* a "genuine dispute" as to a "material fact." Cal. Practice Guide: Federal Civil Procedure Before Trial § 14:100, at 14–29, quoting Fed. R. Civ. Proc. 56(c). "Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, (former) Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Cal. Practice Guide: Federal Civil Procedure Before Trial § 14:114, at 14–49, quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (parenthesis added).

### B. Analysis

To answer the question of whether the Tax Refunds belong to Imperial or to the Bank, the Court must look at the terms of any pre-bankruptcy contract between the parent and subsidiary entity and decide whether the parties are in a debtor-creditor relationship, or in a trust/agency relationship. *See F.D.I.C. v. AmFin Financial Corp.*, 490 B.R. 548, 553 (N.D.Ohio 2013) ("*AmFin Financial*"); *Siegel v. FDIC (In re IndyMac Bancorp, Inc.)*, 2012 WL 1037481, *13 (Bkrtcy.C.D.Cal. Mar. 29, 2012) ("*IndyMac*")[3]. If the parties are debtor-creditors, then the Tax Refunds go to Imperial. *Id.* If the parties are in a trust/agency relationship, then the Tax Refunds go to the Bank. *Id.*

Imperial argues that the relevant pre-bankruptcy contract is the Tax Allocation Agreement (TAA)[4] between Imperial and the Bank. According to Imperial, the terms of the TAA unambiguously create a debtor-creditor relationship. [Doc. No. 77–1 at 10–14.]

The Bank argues that (1) the TAA is not valid and enforceable against the FDIC under 12 U.S.C. § 1823(e) because it was "backdated" and never independently approved by the Bank's board of directors; (2) there is a presumptive principal-agent relationship between Imperial and the Bank, and there is no "differing agreement" that clearly and explicitly alters that presumption; (3) the relevant pre-bankruptcy documents are the Corporate Income Taxes Administration Policy (TAP) and the Interagency Policy Statement on Income Tax Allocation in a Holding Company Struction (IPS), and these documents require Imperial to hold the Tax Refunds

---

**3.** The *IndyMac* report and recommendation was adopted in its entirety after *de novo* review by the district court. *In re IndyMac Bancorp, Inc.*, 2012 WL 1951474 (C.D.Cal. May 30, 2012).

**4.** The TAA can be found at Doc. No. 77–3 at 61 and Doc. No. 78–4 at 29.

as an agent for the Bank; (4) the creation of a debtor-creditor relationship claimed by Imperial would constitute an impermissible loan and/or extension of credit by the Bank to Imperial, contrary to federal banking and other laws; and (5) the TAA is unenforceable under California law. [Doc. No. 78–1 at 9–10.]

■ This Court agrees with Imperial that the TAA clearly creates a debtor/creditor relationship. The TAA contemplates that Imperial prepares and files all tax returns on behalf of the consolidated group, and requires that Imperial pay all of the group's tax liability. TAA § III.1. The Bank, in turn, is required to pay to Imperial the amount of its hypothetical stand-alone tax liability, calculated as if the Bank had filed a separate federal or state income tax return. TAA § III.2. If the consolidated group is entitled to a refund, the appropriate governing tax authority pays such refund directly to Imperial. 26 C.F.R. § 1.1502–77(a)(2)(v).

The TAA also provides that Imperial will "pay" the Bank if the Bank suffers losses that would have entitled the Bank to a refund had it filed separate tax returns. TAA § III.3. Specifically, Section III.3 of the TAA states:

> If any Subsidiary would be entitled to a refund of Federal corporate income if it filed a separate Federal income tax return, or if currently generated losses or credits of any Subsidiary reduce the current tax liability of the consolidated group, Parent shall pay to that Subsidiary that sum which shall result from the calculation required by paragraph II, above. In the event that a Subsidiary's separate company taxable income is a loss in any given year as calculated under paragraph II, and the consolidated

group is unable to utilize the loss to reduce its current tax liability, the Subsidiary will first offset this loss against prior years taxable income. If the loss is greater than prior years' profits, the excess will be carried forward against future years' taxable income. The tax repayment from Parent to Subsidiary under this paragraph will be calculated on the amount of the loss carried back to prior years, and no further tax will be payable to Parent by the Subsidiary until the losses carried forward are fully utilized against future years' income.

[Doc. No. 78–4 at 31.]

Upon review of the above language, the Court agrees with Imperial that the TAA unambiguously creates a debtor-creditor relationship between the holding company and its affiliates.[5] Courts across the country have repeatedly held that terms such as "reimbursement" and "payment" in a tax sharing agreement evidence a debtor-creditor relationship. *AmFin Financial,* 490 B.R. at 553; *In re IndyMac,* 2012 WL 1037481, at *13; *In re BankUnited Financial Corp.,* 462 B.R. 885, 900 (Bankr. S.D.Fla.2011); *In re NetBank, Inc.,* 459 B.R. 801, 814–15 (Bankr.M.D.Fla.2010); *In re First Central Financial Corp.,* 269 B.R. 481, 497–98 (Bankr.E.D.N.Y.2001); *United States v. MCorp Fin., Inc. (In re MCorp Fin., Inc.),* 170 B.R. 899, 902 (S.D.Tex. 1994); *In re Franklin Savings Corp.,* 159 B.R. 9, 29 (Bankr.D.Kan.1993).

Here, the TAA uses words such as "pay" and "repayment," and provides that Imperial must remit *an amount* calculated by reference to some of the refunds, rather than the actual refunds in kind. Thus, the TAA makes Imperial a debtor of the Bank,

---

5. Because the TAA is unambiguous, extrinsic evidence is unnecessary to interpret it. *See* *IndyMac,* 2012 WL 1037481, at *9.

not an agent or a trustee. *See In re IndyMac*, 2012 WL 1037481, at *13.

### 1. The TAA is binding on the Bank.

▮▮▮ The Bank argues that the TAA is not valid and enforceable against the FDIC–Receiver under 12 U.S.C. § 1823(e) [6] because it was not contemporaneously executed and not approved by the Bank's board of directors, and the approval is not expressly reflected in the board minutes. [Doc. No. 78–1 at 9.] However, the TAA was executed by both parties no later than December 31, 1998, well prior to the tax years at issue with regard to the Tax Refunds. [Doc. No. 78–4 at 28.] Also, the Bank admits that on September 30, 2004, the Bank Board approved the Tax Administration Policy (TAP) [7], and the TAP specifically incorporates the TAA and calls the TAA "controlling authority" for the administration of income taxes. [Doc. No. 78–5 at 1–7.] Therefore, the TAA was signed and approved by the Bank. *See Indymac*, 2012 WL 1037481, at *40 (tax sharing agreement held enforceable where agreement was part of set of policies, which policies were approved by the Board).

Moreover, as held in *Indymac*, 12 U.S.C. § 1823(e) does even not apply to this situation because the Tax Refunds were not an "asset" of the Bank and the TAA is not a "loan":

More generally, the Court is doubtful that section 1823(e) even applies in this context. The statute by its terms is limited to an "agreement which tends to diminish or defeat the interest of the [FDIC] in any asset" it acquired as receiver of the Bank. The FDIC's argument that the TSA defeats the supposed interest of the FDIC in tax refunds simply assumes that those refunds were an "asset" of the Bank to begin with. The Court again rejects this mischaracterization of the arrangements between Bancorp and the Bank. In addition, multiple courts have held that section 1823(e) only applies to "conventional loan" transactions. *See, e.g., John v. RTC*, 39 F.3d 773, 776 (7th Cir.1994); *E.I. du Pont de Nemours & Co. v. FDIC*, 32 F.3d 592, 597 (D.C.Cir.1994). As the Court has explained, the TSA is not an agreement for a "loan," and it certainly is not the sort of "regular banking transaction" to which section 1823(e) is intended to apply. Given that the TSA was repeatedly submitted to and approved by IndyMac's federal regulators, the Court does not accept the FDIC's suggestion that the TSA is one of the "secret agreements" at which the statute is aimed. *See, e.g., Brookside Assocs. v. Rifkin*, 49 F.3d 490, 495–97 (9th Cir. 1995).

*Indymac*, 2012 WL 1037481 at *41.
*See also AmFin Financial Corp.*, 490 B.R. at 554.

---

**6.** 12 U.S.C. § 1823(e)(1) states: No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
 (A) is in writing,
 (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, con-temporaneously with the acquisition of the asset by the depository institution,
 (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 (D) has been, continuously, from the time of its execution, an official record of the depository institution.

**7.** The TAP can be found at Doc. No. 78–5 at 6 and 13.

Thus, § 1823(e) is not applicable, but even if it were, all criteria are met because the TAA was signed by the Bank and approved by the Board. Therefore, the TAA is binding on the Bank.

### 2. There is no presumptive agency relationship.

 The Bank argues that, pursuant to 26 C.F.R. § 1.1502–77(a), when corporations file consolidated income tax returns the common parent makes the tax payments and receives refunds as agent for members of the consolidated group. [Doc. No. 78–1 at 22.] According to the Bank, absent a "differing agreement" that clearly and explicitly modifies the presumptive principal-agent relationship, the mere existence of a TAA does not alter or override the presumptive agency relationship between the parent holding company and its subsidiary bank consistent with the economic reality of the arrangement. [Doc. No. 78–1 at 22–23.] In doing so, the Bank cites to *In re: Bob Richards Chrysler–Plymouth Corp. (In re Bob Richards)*, 473 F.2d 262, 264–65 (9th Cir.1973).

*Bob Richards*, however, provides a gap-filling rule for situations where there is no agreement—express or implied—between the parties. *Id.* at 264. The gap-filling rule does not apply when the parent and subsidiary have an agreement defining their relationship with respect to any tax refunds. *Id.* at 264–65. *See also Indy-Mac*, 2012 WL 1037481, at *27 (describing the uniform view that similar tax sharing agreements render *Bob Richards* inapplicable); *AmFin Financial Corp.*, 490 B.R. at 551 (court declines to adopt and rely

upon the *Bob Richards* rule where tax sharing agreement fully addresses the rights and obligations of the parties). Here, there is a TAA that fully defines the rights and obligations of the parties with regard to tax refunds. Therefore, there is no presumptive agency relationship.[8]

### 3. The TAP and the IPS do not require Imperial to hold the Tax Refunds as an agent.

The Bank argues that Imperial's policy for filing federal and state income tax returns was set forth in the TAP, which was approved by Imperial's Board of Directors. [Doc. No. 78–1 at 8.] According to the Bank, the TAP is a fully integrated document that incorporates both the TAA and the "Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure," 63 Fed. Regl. 64757 (Nov. 23, 1998) (the IPS)[9]. [*Id.* at 8–9.] When these documents are read together, argues the Bank, Imperial received the Tax Refunds and holds them only as agent for the Bank. [*Id.* at 12–13.]

 This argument is not persuasive. First, the TAP (§ III) specifically states that the TAA and the IPS provide "controlling authority for the administration of taxes." [Doc. No. 78–5 at 13.] Therefore, statements in the TAP—such as Imperial *should* pay amounts due under the TAA within three business days (TAP § IV)—are statements of general policy and are not inconsistent with the debtor-creditor relationship established by the TAA. Second, the TAP was not signed by representatives of the Bank or Imperial [Doc. No. 77–4 at 147] and therefore could not have been deemed an amendment to the TAA,

---

8. The Bank's reliance on *Lubin v. FDIC*, 2011 WL 825751 (N.D.Ga. March 2, 2011) is also misplaced, as the tax sharing agreement in *Lubin* had precise language that created an agency, specifically stating that funds were "obtained as agent" for group members. *Id.*

at *5. There is no such language in the TAA. *See also IndyMac*, 2012 WL 1037481, at *17–18; *AmFin Financial*, 490 B.R. at 553.

9. The IPS can be found at Doc. No. 78–4 at 35.

which requires modifications to have the same written formalities as the TAA. [*See* TAA § XI.]

As for the IPS, it is legally and factually irrelevant. As analyzed in *IndyMac*, many courts have found the policy statements to be "non-binding" and "not material to adjudicate the ownership issue." *IndyMac*, 2012 WL 1037481, at *39, quoting *Siegel v. FDIC*, 2011 WL 2883012 (C.D.Cal.2011), at *4. *See also BankUnited*, 462 B.R. at 896, n. 29; *NetBank*, 459 B.R. at 817–18; *Team Financial*, 2010 WL 1730681 (Bkrtcy.D.Kan.2010), at *8–9. Moreover, the TAA does not incorporate the version of the IPS relied upon by the Bank. But even if it were incorporated, the IPS is not inconsistent with there being a debtor-creditor relationship arising under the TAA. *See IndyMac*, 2012 WL 1037481, at *40 and 40 n. 28 (detailing how the IPS "contains several provisions that are consistent with there being a debtor-creditor relationship between the parent and its subsidiary concerning tax refunds"). Therefore, the TAP and the IPS do not change the terms of the TAA and do not require Imperial to hold the Tax Refunds as an agent.

4. The debtor-creditor relationship does not violate federal banking or bankruptcy laws.

■ The Bank argues that creation of a debtor-creditor relationship under the

TAA would create an impermissible loan and/or extension of credit by the Bank to Imperial in violation of 12 U.S.C. § 371c, a banking statute that governs loans between a bank and its affiliates. [Doc. No. 78–1 at 26.] This theory was thoroughly analyzed and rejected by the *IndyMac* court. 2012 WL 1037481, at *36–39. This Court hereby adopts the *IndyMac* analysis in its entirety. *See also AmFin Financial*, 490 B.R. at 553–54 (adopting *IndyMac* analysis on this issue). Therefore, the TAA does not violate 12 U.S.C. § 371c.

The Bank also argues that interpreting the TAA to create a debtor-creditor relationship would effectively require the making of an unenforceable post-petition loan of the Tax Refunds to Imperial in violation of the Bankruptcy Code, 11 U.S.C. § 365(c)(2).[10] [Doc. No. 78–1 at 28.] However, § 365(c)(2) is irrelevant by its plain terms, as Imperial is not seeking to "assume" or "assign" the TAA. *See IndyMac*, 2012 WL 1037481, at *34. However, even if it were relevant, the TAA is not a contract for a loan or any other financial accommodation. *Id.* Again, the *IndyMac* court extensively analyzed this issue, which analysis is hereby adopted. Therefore, the TAA does not violate § 365(c)(2).

Finally, the Bank argues that the TAA has now been rejected in the Imperial

---

10. 11 U.S.C. § 365(c) states: The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment; or

(2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor; or

(3) such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief.

bankruptcy pursuant to the terms of Imperial's confirmed bankruptcy plan. [Doc. No. 78–1 at 28.] According to the Bank, rejection of the TAA constitutes a material breach immediately before the bankruptcy filing and therefore renders the TAA unenforceable against the Bank and deprives Imperial of an interest in the Tax Refunds. *Id.* at 28–29. Again, this argument was analyzed and rejected by the *IndyMac* court. 2012 WL 1037481, at *30–33. The TAA existed prepetition and "continues to define the nature of the parties' relationship and provides the source to determine the extent of any unsecured claim against the estate." *Id.* at *31. Therefore, the debtor-creditor relationship established by the TAA does not violate federal banking or bankruptcy laws.

5. California law does not invalidate the TAA.

The Bank argues that allowing Imperial to retain the Tax Refund would constitute an involuntary assignment to Imperial without the Bank's consent or approval, and is therefore invalid, ineffective and unenforceable under California law. [Doc. No. 78–1 at 29, 30.] Once again, this argument is unpersuasive because it assumes that the Bank owned the Tax Refunds in the first place. *See Indy-Mac*, 2012 WL 1037481, at *42. The Bank also argues that construing the TAA as an assignment is void under California law for lack of consideration. [Doc. No. 78–1 at 30.] Again, the TAA is not an assignment because the Bank does not own the Tax Refunds. Moreover, the TAA expressly states that it is to "the mutual advantage" of both parties to file consolidated tax returns [TAA ¶ I.1.] and, therefore, has sufficient consideration to be enforceable. *See IndyMac*, 2012 WL 1037481, at *41.

Finally, the FDIC argues that allowing Imperial to retain the Tax Refunds would be "unfair" and "overreaching." However, "there is absolutely nothing inequitable, unjust, overreaching, or otherwise unfair about the FDIC receiving proportional distributions on account of whatever unsecured claim the Bank would have enjoyed under the [TAA]." *IndyMac*, 2012 WL 1037481, at *42. Therefore, California law does not invalidate the TAA.

## III. CONCLUSION

For the foregoing reasons, the Court **HEREBY:**

(1) **GRANTS** Imperial's motion for summary adjudication as to the first claim for relief seeking a declaratory judgment regarding the ownership of certain tax refunds [Doc. No. 77];

(2) **DENIES** the Bank's motion for summary adjudication as to the first claim for relief seeking a declaratory judgment regarding the ownership of certain tax refunds [Doc. No. 78];

(3) **ENTERS** a declaratory judgment that the Tax Refunds are property of Imperial's bankruptcy estate and that the Bank has no rights or interest in the Tax Refunds or any portion of the Tax Refunds and is entitled only to a general unsecured claim against Imperial's bankruptcy estate with respect to any right, pursuant to the TAA, to payment calculated by reference to tax refunds received by Imperial.

**IT IS SO ORDERED.**